Walter Hartje, for use of Mary Middleton, Admx.,
v. Charles F. Keeler.

Gen. No. 13,161.

1. EXECUTION—*who proper party to deny, of instrument relied upon as defense.* A person alleged to have executed an instrument relied upon as a defense to an action of assumpsit, is the proper person to deny its execution by affidavit.

2. JUDGMENT NON OBSTANTE VEREDICTO—*when entry of, not appropriate.* A judgment *non obstante veredicto* for the plaintiff is not appropriate where all the issues tendered, with a single exception, were material, and where even though the plaintiff prevailed the question of damages would still be open to the consideration of the jury.

3. CONTRACT—*what does not excuse performance of.* One engaged in the mining of coal who contracts with another for the hauling thereof, agreeing that he will keep a certain number of

teams employed, is not excused from the performance of such obligation by the loss of customers, without his fault, by virtue of a clause authorizing a failure to perform in the event of strikes or the happening of things beyond his control.

4. CONTRACT—*when not void for want of mutuality.* A contract by which one agrees for a certain period to haul all the merchandise which the other might require, regardless of the amount, in consideration that the other will furnish a minimum specified amount, is not void for want of mutuality.

Assumpsit. Error to the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded. Opinion filed April 29, 1907. Rehearing denied May 16, 1907.

WELLS, BOWERSOCK & STILWELL, for plaintiff in error.

J. B. LANGWORTHY and DAVID K. TONE, for defendant in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of *nil capiat* and for costs rendered in the Circuit Court of Cook county on March 24, 1906, in favor of the defendant in error, who was also defendant below, and against the plaintiff in error, who was plaintiff below. It. followed the verdict of a jury in an action of assumpsit. There were many pleadings filed in the cause, but the issues finally made up may be thus described:

The plaintiff declared upon the breach of a written contract made December 19, 1892, between Charles F. Keeler of the one part and Bernard Strauss, Joseph H. Middleton and Walter Hartje of the other, alleging that on November 22, 1893, subsequent to the making of the contract, a copartnership which existed between the parties of the second part when it was made was dissolved, Strauss withdrawing and assigning his interest in the contract sued on to the remaining members of the firm, with the consent and ratification of the party of the first part; that later on, September 15, 1894, Middleton and Hartje dissolved partnership; that

Middleton succeeded to all interest in the business, and Hartje assigned all his interest in the contract to Middleton; that on July 30, 1902, Middleton departed this life, and afterward Mary Middleton was appointed administratrix of his estate; that Strauss, Middleton & Hartje and their assigns and Middleton and said administratrix had respectively always been ready, willing and able to carry out the contract, but that defendant had refused to do so.

The contract in question is set out in full in the declaration. It begins by reciting that Keeler is engaged in the business of buying and selling coal in Chicago, and incidentally thereto, transporting and delivering said coal between various points in the city, and for that purpose had acquired certain horses, harnesses, blacksmith and saddler's tools, wagons, and other chattels connected with the teaming business, and that said Keeler had agreed with Strauss, Middleton & Hartje to sell them his business of transporting and delivering coal and said personal property enumerated. It then expresses the conveyance to said Strauss, Middleton & Hartje, for $6,000 in cash and $4,000 in notes, of said business and property, and proceeds to provide that said Keeler "Doth agree to and with said second party that for and during the period of ten years next ensuing after the 19th day of December, 1892, he will and doth hereby employ said second party to transport and agrees to deliver to said second party for transportation from such points in said city of Chicago as he shall hereafter from time to time designate and give said second party notice in writing of to such other points in said city as said first party shall hereafter, from time to time, designate and give said second party notice in writing of as much coal as can by said second party, their servants and employees, by the use of ten two-horse teams of horses and wagons of two one-horse teams of horses and wagons, or carts, be transported during said period of ten years between said points so to be designated, and will pay to said second party for transporting said coal between said points the sum of thirty-five cents for each ton of coal as shall be steam coal, the sum of fifty cents for each

ton of coal thereof as shall be domestic coal, and the sum of fifteen cents for each ton of said coal which shall be by said second party transported from railway trains of cars in said city to the yards of said first party in said city, and to pay the same by paying to said second party on Saturday of each week that shall be during said period of ten years all sums which said second party shall have earned hereunder during such week."

The contract then describes the notes given for the $4,000, and provides that the said Strauss, Middleton and Hartje "do hereby agree to transport as much coal as said first party shall in writing notify and require said second party to transport, and shall deliver to said second party for transportation from such points in said city of Chicago as shall by said first party in and by written notices or orders delivered to said second party be designated or appointed to such other points in said city as shall in like manner be designated and appointed, and will at all times during said period of ten years furnish, provide and keep on hand and in their service sufficient teams, wagons, carts and employees to enable them to receive, transport and deliver as aforesaid all the said coal with customary and business-like promptness and despatch. But said second party shall not, by means of anything herein contained, be required or be bound to transport any ton of said coal any greater distance than four miles, unless the said first party shall pay to said second party therefor the sum of .... cents per mile for transporting each ton of coal transported at any one haul any distance exceeding said distance of four miles."

Then follow the following stipulations:

"The said second party further agree to employ and keep engaged in and about their said business only such sober, industrious and discreet drivers and other employees as shall not be reasonably objected to by said first party, and agree that on receipt of notice in writing given and delivered by said first party to said second party that any designated employee is objectionable to said first party for good reasons by him in such notice specified and particularly set forth,

they, said second party, will discharge such employee and as soon thereafter as can reasonably be done replace such employee with some competent employee who shall be free from all reasonable objection.

"In the event of the dissolution of the firm of Strauss, Middleton & Hartje, this contract shall be considered as an asset of said firm and might be assigned.

"The said Keeler shall not be obliged to keep the horses and wagons above mentioned employed in the event of a strike or thing that he cannot control.

"The said first party shall pay for hauling contract hard coal the sum of forty cents per ton.

"In the event of the death of said first party before the end of the period hereinbefore mentioned, to-wit: ten years, said contract shall terminate and be at an end.

"All wagons used in the transporting of coal as aforesaid shall bear the name of said first party.

"The said first party in connection with the foregoing hereby sells and assigns to said second party the leasehold of the premises used by said first party as a barn in the rear of 538 and 540 Wabash avenue."

The breach of the contract assigned in the declaration was that on or about September 15, 1894, the defendant neglected and refused and thereafter continued to neglect and refuse, without any reasonable cause, to deliver to said Middleton for transportation, etc., as much coal as could by the use of ten two-horse teams and two one-horse teams be hauled and transported.   It is alleged that from September 15, 1894, to May 1, 1896, there was only delivered for transportation, etc., so much coal as could be transported by five two-horse teams; from May 1, 1896, to May 1, 1900, only so much as could be transported and delivered by the use of two two-horse teams; from May 1, 1900, to August 1, 1901, only so much as could be transported by one one-horse team; and from August 1, 1901, none at all.

Keeler, it is alleged, from and after said last mentioned date wholly abandoned and refused to perform said contract.

By the defendant's pleas and the subsequent pleadings

nine issues seem to have been finally made upon which the case went to the jury.

First. The general issue of *non assumpsit.*

Second. A plea of denial of the execution of the contract.

(These two pleas were sworn to and put in issue the execution of the contract by the defendant.)

Third. An issue whether the trustee in bankruptcy of Middleton, so appointed October 16, 1901, on an involuntary petition against Middleton of the date of June 20, 1901, in the District Court of the United States in this District, was not the owner of said claim sued on if it existed, or whether because of the trustee's refusal and neglect to assert said claim and the subsequent settlement of said bankruptcy proceedings and dismissal of said petition before the beginning of this suit, the estate of said Middleton became again invested with said claim.

Fourth. The issue whether because of the bankruptcy proceedings and the loss thereby of all property and means by which he could carry out said contract, Middleton was, when adjudged a bankrupt, incapacitated from carrying out said contract and abandoned the same.

Fifth. The issue whether Middleton abandoned the said contract by taking his teams and wagons and using them in other work out of the city of Chicago.

Sixth. The issue whether in the course of bankruptcy proceedings the receiver in bankruptcy took all the property and assets of said Middleton and incapacitated him from performing his contract.

(This issue is practically the same as the fourth issue above noted.)

Seventh. The issue whether the contract between the parties alleged in the declaration was executed, or whether the contract executed was one in which the number of horses and wagons agreed to be kept employed by Keeler was left blank, so that no such obligation as Keeler is declared to have defaulted in, was ever incurred by him.

Eighth. The issue whether the amount of coal sold by

Keeler diminished through circumstances out of his control, by reason of many of his customers who formerly used the coal mined and sold by him discontinuing the use of said coal.

The plea tendering this issue was demurred to, and the demurrer was overruled. The bill of exceptions shows also that after the verdict, preliminary to other motions for a judgment *non obstante veredicto,* and for a repleader, and for a new trial, a motion was made by the plaintiff to strike out this plea as tendering an immaterial issue.

Ninth. The issue whether if Strauss, Middleton & Hartje and their successors and assigns were not furnished for hauling, the coal they were entitled to have under the contract, it was due to strikes at Keeler's mines, or other like things beyond his control.

Evidence upon all these issues was submitted to the jury, and the jury found a general verdict for the defendant.

We should not be inclined to disturb this verdict except for one controlling consideration. We think that the trial judge took an incorrect view of the materiality of the issue which we have numbered "Eighth," and, acting on that view, made several erroneous rulings. He admitted over objection immaterial evidence referring to it, and he gave an incorrect instruction and refused correct instructions on the question involved in it. This leaves out of the account the overruling on December 2, 1905, of the demurrer filed November 23, 1905, to the first additional plea filed November 17, 1905, which set up as matter of defense the theory that diminution of Keeler's business by reason of his customers substituting gas and cheaper coal for that coal theretofore mined and supplied by him, was one of those "things that he could not control," which the contract provided should excuse him from its full performance. Although this ruling was erroneous, the error cannot be complained of by plaintiff in error after his traversing the plea by the replication of December 6, 1905.

Nor do we feel called upon in the present stage of the

case to pass on the refusal of the trial judge after verdict to strike the plea from the files.

We do not propose to make more than a mere mention of any of the alleged errors discussed by the briefs, other than those proceeding from the incorrect theory advanced by the plea in question and adopted by the court, and wish it to be understood that in remanding the cause we are neither expressing nor implying an opinion on its general merits, on any other of the issues which we have outlined, or on the amount of damages, if damages should have to be assessed. These questions will all be open in another trial. It is the impossibility of determining whether or not the erroneous theory adopted by the trial judge, stated above, and the rulings springing therefrom, influenced or controlled the verdict, that renders a reversal and remandment necessary.

The question arises thus: As before noted, the contract says, "The said Keeler shall not be obliged to keep the horses and wagons above mentioned employed in the event of a strike or thing that he cannot control." This clause was claimed by the defendant and held by the trial judge to excuse Keeler's performance of the contract, if the demand for the coal mined and sold by Keeler when the contract was made diminished because of the competition in the market of gas and coal which could be profitably sold cheaper. Under this theory much evidence was offered and several witnesses testified over the objections and exceptions of the plaintiff that other coals had taken the place of Indiana Block coal because less expensive, and that several owners of large buildings who had been customers for Mr. Keeler's coal had substituted gas. This was error.

Instructions otherwise unobjectionable, tendered by the plaintiff, were refused because they negatived this theory and told the jury that it would be no defense that customers of the defendant had substituted cheaper coal or gas for Indiana Block coal. This also was error.

Finally: Defendant's instruction 4 as given adopted the erroneous theory. It told the jury that "a strike or thing that he cannot control" included not only strikes, but

also loss of business or inability to sell coal on the part of Keeler, whether the same be caused by the customers of said Keeler substituting gas or other kinds of coal for the coal furnished by said Keeler, or by said Keeler losing said customers, or his inability to obtain customers through other causes without his fault and beyond his control." This also was erroneous.

Our chief reason for holding this theory of defense wrong can be very concisely stated. The proposition on which it is based is so stated in Walker v. Tucker, 70 Ill., 527, 542. "It is no defense for a breach of a contract that to perform it would be unprofitable."

It is frivolous to say that the contention expressed in the plea involved in this question is that it was absolutely impossible for the defendant to sell the kind of coal which he had mined and sold for years. It is, when analyzed, simply a statement that he could not profitably sell it.

There is, however, in the maxim of Lord Hale—"The meaning of a word may be ascertained by reference to the meaning of words associated with it," and in that of Lord Bacon, "The coupling of words together shows that they are to be understood in the same sense"—good ground for holding the word "thing," in the clause in question, to mean something of the nature of or analogous to a strike of workmen, at the mine or on the railroad, such, for example, as an accident on the road or a fire at the yards—a sudden and unforeseen emergency or crisis.

Moreover, the contract nowhere shows that the coal referred to in it was the Indiana Block coal mined by defendant. It is coal generally—such as is and was dealt in in Chicago—and that this is true is shown by the fact that a specified price is named for the hauling of "hard coal," which is not mined in Indiana.

It would serve no good purpose to discuss the cases cited by defendant's counsel to establish their thesis in relation to this defense. It is sufficient to say that they do not seem to us in point.

As these considerations make us think that the cause

should be remanded for a new trial, in which this erroneous theory of defense shall be eliminated, it is proper for us to express our opinion on several of the other alleged errors and cross-errors discussed in the briefs of counsel.

We think the trial court erred in its order striking from the files the affidavit filed by Mary Middleton wherein she denied the execution of the instrument set forth in the defendant's pleas, and erred in refusing to set aside the order on motion. We think she was the proper person to make the affidavit. Foreman Shoe Co. v. Lewis & Co., 191 Ill., 153.

If she was not, then Hartje was, and it was error or an abuse of discretion in that case not to allow him to substitute his affidavit.

We do not think the contention of the plaintiff is well taken, that it was error to receive the testimony concerning possible employment for the teams of Middleton when Keeler's business failed him. We think that the theory on which this evidence was admitted and on which the instructions in this regard which are complained of, were given, is correct,—"that it became and was the duty of the plaintiff to make every reasonable effort to obtain other coal hauling with which to employ teams." Mount Hope Cemetery Association v. Weidenmann, 139 Ill., 67.

As to the alleged errors in the disposition of the plaintiff's motions made after the verdict, we do not think it necessary to be very specific. We do not by any means regard the case as one in which a judgment *non obstante veredicto* would have been proper. All the issues offered were material except the one presented by the first additional plea of November 17, 1905, and even if the plaintiff were to prevail at all, the question of damages was open to the jury to the widest extent.

The court below, on the redocketing of the cause, should allow such amendment of the pleadings as will eliminate the immaterial issue presented by the first additional plea and the replication thereto and rejoinder thereon, and proceed further in a manner not inconsistent with this opinion.

We do not think it necessary to pass on all the cross-errors assigned by the defendant. We will say, however, that we do not think the court erred in refusing the peremptory instructions asked by him, and that we do not think his contention as to the want of mutuality in the contract is well taken. We think the plaintiff's brief properly paraphrases the substance of the contract in this regard in the words: "Strauss, Middleton and Hartje say to Keeler, 'We will agree to haul and deliver all the coal that you have for delivery, however much it may be, provided you will agree to keep ten double and two single teams employed.' " There is no want of mutuality in such a contract as this.

We think that as the evidence stood on the trial of this case, the testimony of Keeler as to what took place at the execution of the contract, as to filling of the blanks in the same, etc., was competent and should have been admitted. Stoltenberg was sufficiently an agent of Middleton in drawing the contract to open the way, by testifying, to the admission of Keeler's testimony to the transaction. Rev. Statutes, chapter 51, section 2, exception 2.

What may be the condition of the record when, if ever, Keeler is offered as a witness to the same transaction in another trial, of course we have no means of knowing. It follows, of course, from what we have said, that there was no error in refusing Keeler's testimony as to his loss of business. On other grounds we think there was no error in refusing his testimony as to strikes. Mary Middleton, as administratrix, is the real party in interest.

For the errors indicated the judgment is reversed and the cause remanded for a new trial and for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*